IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARCITA N. DALTON, ) | |
| ) | |
|     Petitioner, ) | Case No. CV 04-645-S-LMB |
| ) | |
| v. ) | |
| ) | MEMORANDUM DECISION |
| COMMISSIONER, SOCIAL SECURITY ) | AND ORDER |
| ADMINISTRATION, ) | |
| ) | |
|     Respondent. ) | |
| _____) | |

Currently pending before the Court is Marcita N. Dalton's Petition for Review seeking review of Respondent's decision to deny her applications for disability insurance benefits and supplemental security income disability benefits under Titles II and XVI of the Social Security Act. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## ADMINISTRATIVE PROCEEDINGS

Marcita N. Dalton ("Petitioner" or "Claimant") applied for disability insurance benefits and supplemental security income disability benefits on June 13, 2002. (AR 56, 211). Petitioner alleged disability beginning May 23, 2002, as a result of lower back pain, pain in her legs, and nervous depression. (AR 72). Petitioner's applications were denied initially and again after

MEMORANDUM DECISION AND ORDER - 1

reconsideration. Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ").

ALJ John Arkoosh held a hearing on January 14, 2004, at which time Petitioner, represented by counsel, appeared and testified. Dr. James Bruce was called by the ALJ as a neutral witness to provide expert medical testimony. (AR 258). No other medical experts testified. However, the record contains the reports of Drs. Seidenfeld and Radnovich, who examined Petitioner, and Dr. Callao, who reviewed Petitioner's medical records at Respondent's request. The records of Petitioner's treating physicians, Drs. Gerber and Beach, are also in the record.

After reviewing the medical reports and considering other evidence in the record, the ALJ issued a decision on April 2, 2004, denying Petitioner's claim. (AR 18). The ALJ found Petitioner able to perform her past relevant work and is therefore not disabled as defined in the Social Security Act. (AR 23).

Thereafter, Petitioner requested the Appeals Council review the ALJ's decision. The Appeals Council denied Petitioner's request on October 29, 2004, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 5).

Petitioner requests that the ALJ's decision be remanded to allow the ALJ an opportunity to further evaluate the evidence.

## II.

### BACKGROUND

At the time of the hearing before the ALJ, Petitioner was sixty-one years of age with a tenth grade education and past relevant work as a motel desk clerk and patient companion. (AR

19).  Petitioner alleges that she became disabled on May 23, 2002, because of pain in her lower back and "nervous depression."  (AR 72).

### III.

### STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish entitlement to disability benefits.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920 (2005).  The second part of that process involves a finding regarding whether or not the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no "severe" impairment is found, the claimant will be found not to be disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there is substantial evidence to support the ALJ's decision, it must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare,* 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

MEMORANDUM DECISION AND ORDER - 3

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence . . . ."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusion of the ALJ.  *Richardson,* 402 U.S. at 401.  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *See Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.*  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id.* at 1095 (citations omitted).

MEMORANDUM DECISION AND ORDER - 4

The issues presented in the instant appeal are whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether that finding is based on application of proper legal standards.

## IV.

## SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997).

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ found that Petitioner has not engaged in substantial gainful activity since the alleged onset date. (AR 23).

The second step requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found that Petitioner has the medically determinable impairments of degenerative disc disease in the lumbosacral spine, obesity, adult onset diabetes mellitus, an episode of acute renal failure, hypertension, major depression, and an anxiety disorder. (AR 23). Petitioner's impairments significantly limit her ability to perform basic work activities; therefore, they are found to be severe as defined in the regulations. (AR 19).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P,

Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). In this respect, the ALJ concluded that Petitioner does not have an impairment or combination of impairments listed in, or medically equal to one listed in the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4. (AR 23).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this respect, the ALJ concluded that Petitioner has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently and sit, stand, and walk throughout an eight-hour work day. She has the mental ability to understand, remember and carry out work that does not involve complex or detailed instructions and to work with ongoing interaction with the public, co-workers, and supervisors. Petitioner's past relevant work as a companion did not require the performance of work-related activities precluded by her residual functional capacity. Therefore, the ALJ concluded that Petitioner's medically determinable impairments do not prevent her from performing her past relevant work as a companion. (AR 23).

In the fifth step, once it has been established that Petitioner can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that Petitioner retains the ability to do alternate work, and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f). Because the ALJ concluded that Petitioner is able to perform her past relevant work, the ALJ did not address the fifth step in the evaluation process, nor did he need to.

## V.

## PETITIONER'S CLAIMS

Petitioner argues that the ALJ did not provide clear and convincing evidence for finding Petitioner to be not credible and did not give sufficient weight to the opinions of her treating physicians. *Plaintiff's Brief in Support of Petition for Review*, p. 2 (Docket No. 10).

### A.     Petitioner's Credibility

The ALJ found Petitioner's allegations of disability to be not credible. (AR 20). Petitioner argues that the ALJ's decision should be reversed because the ALJ failed to provide specific, clear, and convincing evidence for rejecting Petitioner's testimony. *Plaintiff's Brief in Support of Petition for Review*, p. 11 (Docket No. 10).

Resolution of conflicts and credibility questions are a function solely of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). The ALJ is in the best position to make such credibility determinations, and, for this reason, the ALJ's credibility determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). However, for an ALJ to reject a claimant's subjective complaints and find a claimant's testimony not credible, he must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quoting *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In other words, the Court must uphold the ALJ's determination as to Petitioner's credibility, if both (1) the ALJ provided specific, cogent reasons for the ALJ's disbelief and (2) the record as a whole contains evidence that would allow a reasonable mind to accept the ALJ's findings and conclusion on credibility.

In finding Petitioner's claims of disability to be not credible, the ALJ gave several specific, cogent reasons that are supported by the record as a whole. First, the ALJ rejected Petitioner's claim that she became disabled on May 23, 2002. (AR 20). At that time, she was working as a companion for a person with Alzheimer's disease. (AR 72). Dr. Seidenfeld reports that Petitioner worked with this patient for three years and the job ended on May 23, 2002, "when the woman became too severely ill and had to be placed in a nursing home." (AR 115, 121). Although Petitioner testified that she lost her job due to "falling apart," (AR 271), Petitioner noted on her initial application for benefits that the job ended when the patient was "admitted to a place for Alzheimer pat[i]ents," (AR 72). Consistent with this later statement, the ALJ found that Petitioner's job terminated, not because of changes in Petitioner's physical or mental condition, as the Petitioner claimed, but because the patient was placed in a medical care facility. The ALJ also determined that, although Petitioner alleged the job was highly stressful, the stress was directly related to the person she was caring for, not the job itself. (AR 20).

Second, the ALJ found that Petitioner's condition has not changed significantly since her job as a companion terminated. (AR 20). As to Petitioner's back pain, the Court finds only two medical records indicating that Petitioner sought care for her back pain during the period of alleged disability. (AR 127, 206). Petitioner's limited medical care suggests there have been no significant changes in her condition since the alleged onset date.[1] As to Petitioner's mental health, the medical records indicate that it has not significantly changed since her termination. At that time, Petitioner's depression and anxiety were treated with Effexor. (AR 107). On May

---

[1] Even near the beginning of the alleged disability period, in 2002, a state medical examiner could not find objective support for Petitioner's complaints of lower back pain. (AR 123).

MEMORANDUM DECISION AND ORDER - 8

29, 2003, Petitioner switched to Zoloft, not because of a change in her condition, but because the Effexor created dizziness.  (AR 205).  Following the change to Effexor, Petitioner's medication for her mental health did not change until September 11, 2003, when, because of mood swings, lithium was added to her treatment regimen.  (AR 202).  By October 30, 2003, Petitioner's mood swings had stabilized.  (AR 202).  Petitioner suffered renal failure on December 26, 2003, and was hospitalized for the incident, but was discharged almost a week later in an improved condition.  (AR 198).  Petitioner's physician attributed the renal failure to the lithium and Petitioner was taken off lithium.  (AR 202).  Despite this incident, the record evidence, overall, supports the ALJ's determination that Petitioner's condition remained stable.  Any changes quickly stabilized with minor adjustments to Petitioner's medication.  Additionally, there are no records of Petitioner receiving any kind of counseling for her depression or anxiety.  (*See* AR 113).

      Third, and finally, the ALJ found Petitioner's allegation that she became disabled on May 23, 2002, to be inconsistent with her receipt of unemployment benefits after that time.  (AR 20).  Specifically, Petitioner received $8,853 in unemployment compensation through the second quarter of 2003.  (AR 67).  As the ALJ noted, in order to receive unemployment benefits pursuant to Idaho law, a person must certify that she is able to work and is looking for work.  *See* Idaho Code § 72-1366(4)(a) (2005).  Additionally, courts have relied on the receipt of unemployment benefits as a factor that can be considered in making credibility determinations.  *See, e.g.*, *Smith v. Barnhart,* 395 F.3d 737, 746 (7th Cir. 2005); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998); *Hartnett v. Heckler*, 625 F. Supp. 1405, 1411 (N.D. Ill. 1986).  The Court

determines that the ALJ here properly relied on Petitioner's receipt of unemployment benefits as one of several factors that undermined her credibility.

For these reasons, after carefully reviewing the record, the Court is of the well formed opinion that the ALJ did not err in questioning and ultimately rejecting Petitioner's credibility regarding the extent of her impairments and claims of disability. While the evidence is disputed and conflicting, the Court finds, and thus concludes, that the ALJ provided specific, cogent reasons for his rejection of Petitioner's allegations of disability and that the record, as a whole, contains evidence that would allow a reasonable mind to accept the ALJ's conclusion. Accordingly, the ALJ's findings to reject Petitioner's credibility are sufficiently specific and the ALJ did not arbitrarily discredit Petitioner's testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

### B.     Treating Physicians' Opinions

Drs. Beach and Gerber treated Petitioner for the conditions she claims are disabling. At step four, the ALJ gave neither doctor's opinion significant weight even though they were Petitioner's treating physicians. (AR 22). The ALJ instead relied primarily upon the opinions of Dr. Radnovich, a physician who examined Petitioner at the request of Respondent, and other non-examining physicians, also retained by Respondent. Petitioner argues that, in finding her not disabled, the ALJ failed to make appropriate findings regarding her treating physicians' opinions about her ability to work. *Plaintiff's Brief in Support of Petition for Review* (Docket No. 10).

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The treating

physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual." *Id*. However, a "treating physician's opinion on the ultimate issue of disability is not necessarily conclusive." *Id.* at 762 (citations omitted). The treating physician's opinion may be disregarded by the ALJ if he sets forth "specific, legitimate, reasons for doing so," as long as the decision is based on "substantial evidence," and the reasons for rejecting the physician's opinion are "clear and convincing." *Id.* (citations omitted). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion is a sufficient reason for rejecting that opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 1. Dr. Beach's Opinion

According to the record, the ALJ did not give significant weight to Dr. Beach's opinions regarding Plaintiff's physical abilities because he found them to be inconsistent with Petitioner's medical records and unsupported by clinical findings. (AR 22).

The record contains facts sufficient to support the ALJ's finding that Dr. Beach's opinions were inconsistent with Petitioner's medical record. First, medical records indicate that, over three years, Petitioner complained of back pain on just two occasions. (AR 127, 206). Second, although Dr. Beach indicated Petitioner had "significant arthritic pain" in both her legs and knees, nothing in the record indicates Petitioner was prescribed medication for the pain. (AR 166–67, 206). Third, Dr. Radnovich noted the lack of "discussion of workup [sic] for back pain" in Petitioner's primary care physician's records. (AR 103).

The ALJ also rejected Dr. Beach's opinions because he found that they were based on Petitioner's subjective reports of her limitations and not on "medically acceptable clinical and

laboratory diagnostic" tests of Petitioner's abilities. *See* Social Security Ruling 96–2P (1996), 1996 WL 374188. This finding is supported by the record. First, Petitioner acknowledged at the hearing that Dr. Beach's report assessing Petitioner's functional limitations could have been based mainly on what Petitioner told her. (AR 256–57). Second, in December 2002, Dr. Radnovich could not support Petitioner's complaints of lower back pain with objective medical evidence. (AR 103). As explained above, a lack of objective medical findings can provide sufficient evidentiary support for an ALJ's rejection of a treating physician's opinion. *Tonapetyan*, 242 F.3d at 1149. Accordingly, the Court finds, and thus determines, that there is substantial evidence to support the ALJ's finding that Dr. Beach's opinions were inconsistent with Petitioner's medical record and were based primarily on Petitioner's subjective complaints.

### 2. Dr. Gerber's Opinion

The ALJ did not give significant weight to Dr. Gerber's opinions regarding Petitioner's limitations because the he determined that Dr. Gerber's opinions are inconsistent with Petitioner's medical records, her daily activities, and the limited medical care she has received. (AR 169). Dr. Gerber, in a work capacity evaluation completed on Petitioner's behalf, reported that Petitioner's ability to concentrate for extended periods of time, maintain a schedule, and sustain an ordinary routine were severely limited, almost to the point of preclusion. (AR 169). Dr. Gerber also indicated that, aside from asking simple questions and maintaining basic hygiene, Petitioner cannot function in a socially appropriate way. (AR 170).

Dr. Gerber's opinions, however, are contradicted by the opinions of other doctors as well as by other evidence in the record. For example, in December 2002, Dr. Radnovich examined Petitioner and found that Petitioner's depression and anxiety did not present a significant

disability. (AR 124). Additionally, Dr. Callao, a state agency reviewing psychologist, also found Petitioner's anxiety to be only moderate. (AR 159–64). When Dr. Bruce, a neutral witness and medical expert, questioned Petitioner about the affects of her symptoms she affirmed that they did not significantly interfere with her lifestyle. (AR 264). Further, despite Dr. Gerber's finding that Petitioner could not function in a socially appropriate way, Petitioner was able to attend religious meetings several times a week, (AR 246–47), and regularly visit with friends and family. (AR 247).

Dr. Gerber's opinions may be called into question also because, in filling out the work capacity evaluation form, Dr. Gerber did not indicate the medical and clinical findings that supported his assessments even though a space on the work capacity evaluation specifically requests this information. *See* 20 C.F.R. § 404.1527(d)(2) (2006); Social Security Ruling 96-2P (1996). For all these reasons, the Court finds, and thus concludes, that the ALJ set forth specific, legitimate reasons for disregarding the opinions of Dr. Beach and Dr. Gerber that are based on substantial evidence.

## VI.

## CONCLUSION

The ALJ is the fact finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The Court is of the opinion that the evidence upon which the ALJ relied can reasonably and rationally be relied on to support the ALJ's conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decisions to find Petitioner's allegations and claims of disability to be not credible and to reject the opinions of Petitioner's treating physicians were based on proper legal standards and supported by substantial evidence.  Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## VII.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED:  **March 3, 2006**.

Larry M. Boyle
United States District Court